**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

PAMELA J. EMINISOR,

                Plaintiff,

vs.                                                  Case No.  3:11-cv-570-J-JRK

MICHAEL ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER**[1]

**I.  Status**

Pamela J. Eminisor ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits. Her alleged inability to work is based on a spinal injury to her thoracic and lumbar spine; and chronic, persistent pain that radiates to her chest, abdomen, pelvis, legs, and feet. Transcript of Administrative Proceedings (Doc. No. 7; "Tr."), filed August 18, 2011, at 39, 176. On December 16, 2008, Plaintiff filed an application for disability insurance benefits, alleging an onset date of August 8, 2003. Tr. at 133-42. Plaintiff's claim was denied initially, Tr. at 53-55, and was denied upon reconsideration, Tr. at 57-58.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 8), filed August 19, 2011; Order of Reference (Doc. No. 10), entered August 23, 2011.

On November 1, 2010, an Administrative Law Judge ("ALJ") presided over a hearing at which Plaintiff and her attorney, Michael S. Tyde, appeared. Tr. at 16, 34-50.[2] On November 9, 2010, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. Tr. at 16-26. Plaintiff submitted additional evidence, Tr. at 219-29, with her request for review to the Appeals Council ("AC"), which the AC admitted into the record, Tr. at 5. However, on April 26, 2011, the AC denied Plaintiff's request for review, Tr. at 1-5, making the ALJ's Decision the final decision of the Commissioner. On June 13, 2011, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff explicitly raises one issue: whether the ALJ erred by failing to properly evaluate the medical opinion evidence of Plaintiff's treating physician, Rodney Marcom, D.O. ("Dr. Marcom"). Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 12; "Pl.'s Mem."), filed October 18, 2011, at 1, 10 (emphasis omitted). Within this issue, Plaintiff raises a second issue: whether the ALJ afforded the proper weight to the opinions of two nonexamining physicians. Pl.'s Mem. at 19. Because the undersigned finds that this case is due to be reversed and remanded on Plaintiff's first issue, the second issue is not addressed.[3] See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986)

---

[2] The record is unclear regarding the location of the hearing. The ALJ's Decision reflects that it was a video hearing over which the ALJ presided from Savannah, Georgia and Plaintiff and her attorney appeared from Jacksonville, Florida. Tr. at 16. However, the transcript from the hearing reflects that the hearing site was Jacksonville, Florida and all parties appeared in Jacksonville. Tr. at 32. This discrepancy is immaterial to the substantive merits of this case.

[3] Although Plaintiff's second issue is not substantively addressed herein, the undersigned notes that one of the "nonexamining physicians," Vera H. Ambakisye, that Plaintiff and the ALJ refer to as a "doctor" is actually a Single Decision Maker.

(per curiam); Freese v. Astrue, Case No. 8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); see also Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 18-25. At step one, the ALJ observed that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of August 8, 2003 through her date last insured December 31, 2008." Tr. at 18 (emphasis and citation omitted). At step two, the ALJ found that through the date last insured Plaintiff suffered from "the following severe impairments: degenerative disc disease of the lumbar and thoracic spine; degenerative arthritis of the lumbar and

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

thoracic spine; and kyphoscoliosis." Tr. at 18 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 19 (emphasis and citation omitted).

The ALJ determined Plaintiff "had the residual functional capacity [("RFC")] to perform light work as defined in 20 C.F.R. § 404.1567(b)" through the date last insured, with the following exceptions:

> Plaintiff can lift 10 pounds frequently and 20 pounds occasionally. She can sit for six hours out of an eight-hour workday. She can stand and/or walk for six hours out of an eight-hour workday. She can frequently kneel, and can occasionally stoop, balance, crouch, crawl or climb ramps and stairs, but she can never climb ladders, ropes or scaffolds. Additionally, [Plaintiff] should avoid concentrated exposure to hazards, such as machinery, heights, etc.

Tr. at 19-20 (emphasis omitted). At step four, the ALJ found Plaintiff was unable to perform her past relevant work through the date last insured. Tr. at 24 (emphasis and citation omitted). In addition, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined at step five that through the date last insured "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." Tr. at 25 (emphasis and citation omitted). The ALJ concluded Plaintiff was not under a disability at any time from August 8, 2003 through December 31, 2008, the date last insured. Tr. at 25 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions

of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

Plaintiff argues the ALJ did not properly evaluate Dr. Marcom's medical opinion.  Pl.'s Mem. at 10.  In support, Plaintiff asserts the reasons cited by the ALJ for discounting Dr. Marcom's opinion do not constitute good cause for concluding that Dr. Marcom's medical opinion on the RFC is only entitled to "little weight." Id. at 14.

On October 26, 2010, Dr. Marcom completed a Physical Residual Functional Capacity Questionnaire ("October 26, 2010 RFC"), in which he opined Plaintiff's impairments have

lasted or can be expected to last for at least twelve months; Plaintiff is incapable of even low stress jobs; and Plaintiff would be absent from work more than four days per month. See Tr. at 373-76. Dr. Marcom listed the clinical findings and objective signs on which he relied, as well as Plaintiff's symptoms and prior treatment. Tr. at 373. Dr. Marcom also noted that he first saw Plaintiff on November 25, 2008, and since that time, he saw her monthly to quarterly. Tr. at 373.

The Regulations instruct ALJs how to weigh the medical opinions of treating physicians[5] properly. See 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing

---

[5] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

"good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (finding no reversible error when "the ALJ articulated specific reasons for failing to give [a treating physician] controlling weight," and those reasons were supported by substantial evidence); Lewis, 125 F.3d at 1440.

The ALJ delineated two main reasons for discounting Dr. Marcom's opinion on the October 26, 2010 RFC. See Tr. at 23. The first reason the ALJ provided is that "it appears Dr. Marcom relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff]." Tr. at 23. The ALJ's second reason is that Dr. Marcom's opinion is not supported by his own treatment notes. Tr. at 23. The ALJ specifically pointed to Dr. Marcom's notes from Plaintiff's November 25, 2008 visit, and the reports generated after Plaintiff's MRIs of her lumbar and thoracic spine conducted on December 1, 2008. Tr. at 23. Each reason is discussed in turn.

### A. Dr. Marcom's Reliance on Plaintiff's Subjective Reports of Symptoms

Plaintiff argues that Dr. Marcom's reliance on Plaintiff's reports of symptoms "is not a 'good cause' [reason] as recognized by the [United States Court of Appeals for the Eleventh Circuit] to disregard the opinions of a treating physician" and that "the ALJ fails to point to any evidence to support his determination that Dr. Marcom based his opinions through 'heavy' reliance upon [Plaintiff's] reports." Pl.'s Mem. at 14 (emphasis omitted). Defendant responds, "Given the lack of objective findings that support Dr. Marcom's opinion, the record supports the ALJ's conclusion that the opinion appeared to be based on Plaintiff's subjective complaints alone, which is sufficient reason to discount Dr. Marcom's opinion." Memorandum in Support of the Commissioner's Decision (Doc. No. 13; "Deft.'s Mem."), filed December 9, 2011, at 12 (internal citation omitted).

The ALJ noted that Dr. Marcom "appears" to rely "quite heavily" on Plaintiff's subjective complaints. Tr. at 23. Standing alone, this statement does not amount to the requisite good cause necessary to discount Dr. Marcom's opinion. As explained below, even considering this statement in conjunction with the ALJ's other reason, the undersigned finds that the ALJ has not shown the good cause necessary to discount Plaintiff's treating physician.

### B. Dr. Marcom's Opinion as Unsupported by his own Treatment Records

The second reason provided by the ALJ for discounting Dr. Marcom's opinion is that Dr. Marcom's opinion is inconsistent with his own treatment records. Tr. at 23. The ALJ cited two treatment records in particular as being inconsistent with Dr. Marcom's opinion on the October 26, 2010 RFC that Plaintiff could not even perform sedentary work: 1) Plaintiff's visit

on November 25, 2008 when Plaintiff had "negative straight leg raises [("SLRs")], full muscle strength and normal reflexes," Tr. at 23 (citing Tr. at 318[6]); and 2) the December 1, 2008 MRIs of Plaintiff's lumbar and thoracic spine showing "only mild degenerative changes with no herniated nucleus pulposus, or evidence of any significant canal or foraminal stenosis," Tr. at 23 (citing Tr. at 319-20). Plaintiff argues that neither of the cited records supports the ALJ's decision to discount Dr. Marcom's opinion as inconsistent with the medical evidence. See Pl.'s Mem. at 14.

### 1. November 25, 2008 Visit Indicating Negative SLR results

The first reason articulated by the ALJ to show that Dr. Marcom's opinion is not supported by his own treatment records deals with Dr. Marcom's notes from Plaintiff's November 25, 2008 visit. See Tr. at 23. The ALJ recognized Dr. Marcom's indication that "[Plaintiff] had negative [SLRs], full muscle strength and normal reflexes." Tr. at 23 (citing Tr. at 318). Plaintiff concedes that Dr. Marcom's notes on this date indicate negative SLRs and full muscle strength, but Plaintiff argues that the ALJ's reliance on "one treatment note" is not good cause to discount the opinion of a treating physician. Pl.'s Mem. at 15 (citing Tr. at 318). Further, Plaintiff recognizes that Dr. Marcom's notes are "difficult to decipher and [Plaintiff] cannot affirmatively state to the Court the significance of the notations found on the lower half of some of Dr. Marcom's treatment notes"; Plaintiff nevertheless interprets these notations as indicating "numerous 'positive findings.'" Id. at 15-16. Defendant, in response, reiterates the negative SLR finding and states that "[m]ost of Dr. Marcom's notes do not

---

[6] A duplicate of this record is found at Tr. at 276.

include any significant objective findings at all other than some indiscernible remarks about Plaintiff's spine." Deft.'s Mem. at 11-12.

One of the few legible notations on the one-page record of Plaintiff's visit to Dr. Marcom on November 25, 2008 reads "- SLR," Tr. at 318, which seems to confirm the ALJ's finding. However, the undersigned cannot decipher the remainder of the form and cannot determine whether the form actually indicates Plaintiff had full muscle strength and normal reflexes. Dr. Marcom's notes for Plaintiff's other visits are likewise largely illegible. See Tr. at 274 (December 17, 2008 visit); Tr. at 275 (December 11, 2008 visit); Tr. at 315 (March 4, 2009 visit); Tr. at 366 (February 16, 2010 visit); Tr. at 367 (November 17, 2009 visit); Tr. at 368 (June 25, 2009 visit); Tr. at 369 (May 5, 2009 visit).

Aside from the negative SLR notation cited above, the only other readily legible notations made by Dr. Marcom regarding clinical findings are on the October 26, 2010 RFC. Tr. at 373-76. Under the sixth item on the RFC, directing the evaluator to "identify the clinical findings and objective signs," Dr. Marcom listed: "multiple muscular spinal region tender points with increased muscle tension and palpable spasms, thoracolumbar scoliosis, multiple vertebral rotations, [positive] straight leg test on right @ 40 degrees with decreased sensations on right." Tr. at 373. Notably, the ALJ does not directly address these specific notations.

The ALJ was correct that Dr. Marcom's finding on the October 26, 2010 RFC that Plaintiff had a "[positive] straight leg test," Tr. at 373, directly contradicts the negative SLR finding on November 25, 2008, Tr. at 318. However, one inconsistency between two records

dated two years apart does not amount to "good cause" to discount a treating physician's opinion.

The illegible nature of Dr. Marcom's treatment notes and the lack of discussion surrounding the findings on Dr. Marcom's October 26, 2010 RFC lead the undersigned to conclude that the ALJ's reasoning in this regard is not supported by substantial evidence.

### 2. Dr. Marcom's Opinion as Inconsistent with Findings on Plaintiff's MRIs

The second reason the ALJ cited as to why Dr. Marcom's opinion is inconsistent with his own treatment notes relates to Plaintiff's MRI records. Tr. at 23 (citing Tr. at 319-20[7]). Specifically, the ALJ stated that Dr. Marcom's opinion was not supported by the MRIs of "the lumbar and thoracic spine," which "demonstrated only mild degenerative changes with no herniated nucleus pulposus, or evidence of any significant canal or foraminal stenosis." Tr. at 23 (citing Tr. at 319-20). Plaintiff alleges that "the ALJ omits large portions of the [MRI] findings and attempts to convey to any subsequent review[er] that they evidenced only 'mild degenerative changes,'" and Plaintiff argues that the ALJ "should be required to adequately and correctly recite the complete findings." Pl.'s Mem. at 17. Defendant counters that "the ALJ's assessment of the MRI results was consistent with that of orthopedist Dr. [Brandon J.] Kambach[, M.D.], who noted that they did not demonstrate any significant pathology and that Plaintiff's spine appeared structurally within normal limits except for mild degenerative changes." Deft.'s Mem. at 12 (citing Tr. at 360).

---

[7] Duplicates of these MRI records are found at Tr. at 277-78.

The MRIs in question were conducted December 1, 2008.  <u>See</u> Tr. at 319-20.  George Vega, M.D. ("Dr. Vega"), a Board Certified Radiologist, signed both MRI reports.  <u>See</u> Tr. at 319-20.  Dr. Vega made the following findings regarding the thoracic MRI:

> Normal marrow signal is noted throughout the thoracic vertebral bodies. No abnormal signal is identified throughout the thoracic spinal cord.
>
> There does appear to be mild to moderate dextro-convex scoliosis present. There is mild degenerative change of the mid thoracic spine and mild to moderate degenerative change of the lower thoracic spinal region without evidence of cord effacement or spinal stenosis.

Tr. at 319.  Dr. Vega stated his impressions of Plaintiff's thoracic MRI as "mild to moderate degenerative change of the lower thoracic spinal region and mild degenerative change of the mid thoracic spinal region without evidence of cord effacement or spinal stenosis at any level.  There is mild to moderate dextro-convex scoliosis present." Tr. at 319.

The findings on the lumbar MRI conducted the same date, also by Dr. Vega, were as follows:

> There is normal marrow signal noted throughout the lumbar vertebral bodies. The conus medullaris is unremarkable and there is no obvious intradural abnormality noted.
>
> [For T12-L1, L1-L2, and L2-L3 there is] no evidence of disc protrusion, neuroforaminal narrowing or spinal stenosis.
>
> L3-L4 There is facet arthrosis but no spinal stenosis.
>
> L4-L5 There is desiccation and mild central protrusion with annular tear. There is facet arthrosis, ligamentum flavum, hypertrophy, and multifactorial early spinal stenosis.
>
> L5-S1 There is desiccation, and mild broad based protrusion. There is facet arthrosis and ligamentum flavum hypertrophy with multifactorial early spinal stenosis. There does appear to be some mild bilateral neural foraminal narrowing.

Tr. at 320. Dr. Vega's impressions were identical to the findings above for L4-L5 and L5-S1. Tr. at 320.

To address Plaintiff's allegation that the ALJ did not accurately cite the MRI results, it is necessary to compare the statements in the ALJ's Decision to the objective findings and impressions made by Dr. Vega. First, in the paragraph in which the ALJ discounted Dr. Marcom's opinion, both MRIs were addressed together. See Tr. at 23. There, the ALJ stated that the MRIs showed "only mild degenerative changes." Tr. at 23. However, the thoracic MRI findings and impressions reflect that while the mid thoracic spine appeared to have only "mild degenerative change," the lower thoracic spinal region appeared to show "<u>mild to moderate</u> degenerative change." Tr. at 319 (emphasis added). Plaintiff highlights this discrepancy and asserts that it exemplifies the ALJ's deficiency in reviewing the medical evidence. See Pl.'s Mem. at 17.

The undersigned notes that in the ALJ's listing of the medical evidence of Plaintiff's severe impairments, the ALJ recited that the MRIs revealed "[m]ild-to-moderate degenerative disc disease in the lower thoracic spinal region," Tr. at 18, which comports with the findings and impressions made by Dr. Vega. However, in the paragraph addressing Dr. Marcom's opinion, the ALJ only mentioned "mild degenerative changes." Tr. at 23. These contradictory statements in the ALJ's Decision leave the undersigned without a basis to review the ALJ's Decision, because it is not clear how the ALJ actually analyzed the MRI reports. The discrepancies between the ALJ's Decision and the objective medical evidence as well as the inconsistencies within the ALJ's Decision frustrate judicial review, and the undersigned

cannot determine whether the ALJ's findings in this regard are supported by substantial evidence.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's reasons for discounting Plaintiff's treating physician do not amount to good cause, because the reasons provided are either not supported by substantial evidence or it is impossible to make such a determination. Accordingly, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A) Reevaluate the totality of Dr. Marcom's medical opinions, including Dr. Marcom's October 26, 2010 RFC, assign the appropriate weight to such opinions, and explain the reasoning behind the weight assigned.
>
> (B) If appropriate, ensure that Plaintiff's other arguments raised in this appeal are considered.
>
> (C) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

3.  If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past-due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  See Bergen v. Comm'r of Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on May 4, 2012.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

emm
Copies to:
Counsel of Record